LARRY G. SMITH, Judge.
We reverse the provisions of a worker’s compensation order providing for payment of wage loss benefits, and payment of claimant’s attorney’s fees by the employer/carrier.
While we agree that claimant proved an essential element showing her “entitlement” to wage loss benefits, in that she established a “permanent impairment,” the evidence she presented fell short of proving another essential element, that is, an actual wage loss during her periods of employment following the injury. She earned higher wages in her first post-accident employment, at Majic Market, from May 30,1980 to mid-October, 1980, than her pre-accident average weekly wages earned from her employment by the appellee-carrier. The wages she earned while employed by Zippy Mart, from mid-November, 1980 to February, 1981, did not fall below the level at which a wage loss payment would accrue under the statute.[1]
*411 In addition, although she was unemployed during October, 1980 to mid-November, 1980, so far as the record discloses she made no effort to obtain work during this time. Therefore, there is no basis in the evidence to support a claim of wage loss benefits during that period attributable to disabilities produced by her accident.[2] Furthermore, in view of her admission that she discontinued her employment at Zippy Mart in February, 1981, because of a dispute with her employer, rather than inability to do the work, she cannot claim that her lack of employment immediately thereafter was related to her disabilities. Moreover, although it appears that she made several efforts to obtain work during February and March, 1981, she offered no proof that jobs within her capabilities were open at these places of business, nor that she was refused employment because of her disabilities.[3]
In summary, we agree with the E/C’s contention that the deputy erred in ordering wage loss payments, because for each period covered by her wage loss claims she either suffered no compensable wage loss, or failed to demonstrate that she was unable to secure employment because of her disabilities.[4]
As for the award of attorney’s fees, we note the provision of the order in which the deputy commissioner found that claimant’s attorney “has rendered a valuable service to the claimant herein, and is entitled to a reasonable attorney’s fee . ... ” We agree with that finding, but it does not constitute a basis for the order requiring payment of attorney’s fees by the E/C. As for the claimant’s contention that the award is justified under the “bad faith” provision, Section 440.34(2)(b), Florida Statutes, we determine that any such award would be premature, since there has been no determination of “bad faith” by the deputy commissioner “through a separate fact-finding proceeding ...,” as required by the statute.
REVERSED and REMANDED for further proceedings.
MILLS and SHAW, JJ., concur.

. According to the formula set forth in Section 440.15(3)(b)l, Florida Statutes (1979), claimant’s wage loss benefits for the period in question would be calculated as follows:

*411

. The claimant testified that she quit her job at Majic Market at the end of October, 1980, because her back was bothering her (plus having a dispute with her employer). There is no affirmative proof, however, that her failure to seek or obtain other equally remunerative employment upon her termination at Majic Market was related to her disabilities.

. Nash v. Holiday Inn at Calder, 395 So.2d 306 (Fla. 1st DCA 1981); Seminole Inn v. Ray, 408 So.2d 1061 (Fla. 1st DCA 1981).

. The order contains a general provision requiring payment of wage loss benefits “from August 12, 1980 to date and continuing so long as wage loss forms are properly submitted.” Presumably “to date” refers to the hearing date, June 3, 1981. Claimant has supplemented the record on appeal by supplying wage loss forms filed through April, 1981. The record discloses that claimant went to work for Joe and Mary’s Grill in April, 1981, but there is no evidence to support a claim of wage loss suffered by virtue of that employment.