ADKINS, Justice.
We have for review by petition for writ of certiorari, an order of the Industrial Relations Commission affirming an order of the Judge of Industrial Claims.
This case arose out of an industrial accident which occurred on June 11, 1968, and as a result of which claimant’s knee was injured. The knee was previously injured in high school and again in 1966. The latter injury required surgery. After the 1966 injury, claimant was able to play basketball and displayed excellent ability. The existence of the disability was known to the employer at the time claimant was employed.
In awarding attorneys’ fees, the Judge of Industrial Claims found that the employer had timely commenced payments within the statutory period. Claimant says this was error and we agree. The record discloses two uncontroverted facts in support of claimant’s contention. The first compensation check was issued August 26, 1968, showing a pay period from June 29, 1968 through August 25, 1968. Also, claimant testified that he informed respondent of his claim on or about June 26, 1968. Since compensation payments did not commence within the period of 21 days from receipt of notice of the accident, as required by Fla.Stat. § 440.34(1), F.S.A., the Judge of Industrial Claims erred in not finding that petitioner was entitled to attorneys’ fees for all benefits received, with *9 the one exception of the medical treatment provided by the employer through Dr. Kis-sam.
Claimant reached maximum medical improvement on June IS, 1970. The Judge of Industrial Claims found that claimant had received a 42% permanent partial disability to the right leg and based the loss of wage-earning capacity on this percentage of anatomical disability. The employer was required to look to the Special Disability Fund for reimbursement for all benefits in excess of those attributable to the industrial accident. Claimant says that his injury went beyond a normal scheduled leg injury in that it put him completely out of the only labor area in which he could qualify.
William J. Spires, manager of McDuff’s Appliance Store, and Leroy Graham, a restaurant owner, testified that claimant sought employment, but was refused because of his physical condition. Paul George Kress, counselor of the Florida State Employment Service, testified that claimant presented himself for an interview and for employment, but no employment opportunity could be found for claimant’s classification,' i. e., common laborer, truck driver or auto mechanic helper. Claimant testified that he sought employment also at a service station, Pantry Pride Supermarket, J. C. Penney’s, a hardware store, the University of Florida, Neisner’s Department Store, Grant’s Department Store, Couch’s T. V. & Appliances, and Williams-Thomas Funeral Home. All of these declined to employ him.
The order of the Judge of Industrial Claims in the case sub judice was rendered prior to the decision of this Court in Gibson v. Minute Maid Corporation, 251 So.2d 260 (Fla.1971). In the Gibson case, the Judge of Industrial Claims found that claimant had received only a 15% partial disability rating of the body as a whole, but found a permanent total disability based upon loss of wage-earning capacity. The facts were as follows:
“Claimant, 42 years of age, was born in Alabama and completed the fifth grade. His entire work experience had been limited to that of a truck driver and a laborer, as he has no specialized skill, trade or training. Claimant has been unable to work since the date of the accident, but he did perform some light duties for the same employer as a truck driver for a period of eight weeks during the interval between January and May of 1967.
“Claimant testified he was unable to perform light-type work due to the pain in his back and leg, and that he had not even done his own yard work since the accident; that he could drive for only short distances of two or three miles for his back would pain him if he sat in the same position for any length of time. Claimant stated that following his discharge by Dr. F. DeWitt Stanford, the treating physician, in January, 1968, he applied for work in several filling stations. Also, he applied to the Division of Vocational Rehabilitation of the State of Florida for assistance in retraining so that he could secure lighter work. Claimant was interviewed by the Rehabilitation Supervisor of the Industrial Relations Commission and indicated a willingness to undertake a prevocational evaluation, provided transportation could be furnished. Claimant made little or no attempt to secure employment after his deposition had been taken by respondents on June 13, 1968.” (p. 261)
The Judge of Industrial Claims in the Gibson case found that
“[CJlaimant had established a prima fa-cie case that he could not uninterruptedly do even light work owing to physical limitations, pain and discomfort due to the accidental injury and that the burden was then shifted to the respondents to show that claimant was able to perform *10 certain types of work within his physical limitations and that such suitable work was available to him. There was no evidence presented that claimant could presently perform any given type of work or that there was suitable work available for him. The only evidence presented by respondents in this regard was testimony that claimant should be able to perform certain types of work. However, the Judge observed that these opinions were based upon objective physical findings and limitations and did not take into account the effects of claimant’s suggestive complaints of pain and the limiting effect on claimant’s work activity.” (p. 262)
We sustained the order of the Judge of Industrial Claims saying:
“Considering the nature and extent of claimant’s residual anatomical disability as related to his age, limited education, and employment history, there exists competent substantial evidence to warrant a finding that a reasonable stable labor market commensurate with claimant’s ability to perform regular employment is unlikely to exist. See Ross v. Roy, 234 So.2d 99 (Fla.1970). In order to obviate a detérmination that claimant was permanently totally disabled, it was incumbent an respondents to show that some form of regular employment is in fact within reach of claimant. Respondents have made no such showing in the present case.
“This conclusion does not foreclose a future showing by respondents that there has been a change in circumstances demonstrating claimant is no longer permanently and totally disabled and is capable of obtaining gainful employment. Fla. Stat. § 440.28, F.S.A., provides respondents such a remedy by way of petition for modification.” (p. 264)
The evidence in the case sub judice shows that a reasonably stable labor market, commensurate with claimant’s ability to perform regular employment, did not exist. When the testimony of claimant and his witnesses concerning employment opportunity was presented, it then became incumbent on respondents to show that some form of regular employment was, in fact, within reach of claimant.
The Judge of Industrial Claims should reconsider this case in the light of our decision in Gibson v. Minute Maid Corporation, supra, and allow attorneys’ fees for benefits received, with the one exception of the treatment rendered by Dr. Kissam.
The order of the Industrial Relations Commission is quashed and the cause is remanded to the Industrial Relations Commission with instructions to further remand same to the Judge of Industrial Claims for further proceedings consistent with the views expressed herein.
ROBERTS, C. J., and ERVIN, BOYD and McCAIN, JJ., concur.